UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

PRISCILLA COLEMAN,

                Plaintiff,                                         COMPLAINT

        -against-                             PLAINTIFF DEMANDS
                                                           A TRIAL BY JURY

PEOPLE CARE INCORPORATED,

                Defendant.

----------------------------------------x

Plaintiff, Priscilla Coleman ("Coleman" or "Plaintiff"), by her attorneys, Vladeck, Raskin, & Clark, P.C., complaining of Defendant, People Care Incorporated ("People Care" or "Defendant"), alleges as follows:

### NATURE OF CLAIMS

1.     Coleman, an accomplished Registered Nurse, began working as a Home Health Aide Instructor at People Care in the late 1990s.

2.     Coleman established herself as one of People Care's best instructors. On every annual performance review that Coleman received in the years immediately prior to her unlawful firing, Coleman did not get a rating lower than "excellent" (the highest possible rating) for any evaluated category. Reflective of Coleman's exemplary record, People Care entrusted her with additional duties beyond those associated with her formal role.

3.     Despite Coleman's success on the job, Coleman's colleagues, including her supervisors and those who participated in her firing, treated Coleman less well than her younger and

1

non-Black peers and repeatedly made biased comments, including suggesting that Coleman retire and that Coleman's energy was out of place for someone her age.

4. Adding further insult and injury, People Care ignored concerns Coleman raised about potentially biased conduct on the job and, instead, suggested she was dramatic for voicing concerns.

5. Consistent with these unlawful attitudes, People Care decided in the early days of the Covid-19 pandemic to fire Coleman and others the company unfairly deemed undesirable. Ignoring Coleman's unimpeachable performance record, People Care decided to fire Coleman, People Care's oldest instructor (86 at the time), and two other Black instructors. People Care, however, retained younger and non-Black instructors.

6. Coleman brings this action to remedy this unlawful conduct.

7. Specifically, Coleman asserts claims for: (1) age discrimination under the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 et seq.; (2) age discrimination under the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290 et seq.; (3) age discrimination under the New York City Human Rights Law (the "NYCHRL"), Admin. Code of the City of New York § 8-107 et seq.; (4) race discrimination under the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; (5) race discrimination under Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; (6) race discrimination under the NYSHRL; (7) race discrimination under the NYCHRL; (8) retaliation under Title VII; (9) retaliation under Section 1981; (10) retaliation under the NYSHRL; and (11) retaliation under the NYCHRL.

PARTIES

8. Coleman, an 89-year-old African American woman, is an experienced healthcare professional who holds a Bachelor of Science in Nursing, a Master's in Nursing Science and Mental Health, and a post-Master's in Psychiatric and Mental Health Nursing.

9. People Care is a healthcare service company that provides various services to healthcare companies, nursing facilities, and assisted-living facilities in New York City and other areas. People Care, among other things, is a licensed Home Care Services Agency that operates a certified home health aide training program.

10. People Care employs approximately 2,500 employees.

11. At all times relevant to this action, People Care was Coleman's employer within the meaning of the ADEA, Title VII, the NYSHRL, and the NYCHRL.

12. Throughout her employment at People Care, Coleman was based at People Care's office in Midtown Manhattan.

13. During the later stages of her employment, Coleman reported, directly and/or indirectly, to the following people: Susan Trocchia, People Care's Director of Education; Joan Altomonte, People Care's former Corporate Director of Clinical Services and Quality Management;[1] Galina Klebanova, People Care's Director of Clinical Services and Quality Management; and Susan Brett, People Care's Chief Operating Officer.

JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over Plaintiff's ADEA, Title VII, and Section 1981 claims pursuant to 28 U.S.C. § 1331, for those claims arise under federal law.

---

[1] Altomonte left this position in or about May 2019.

3

15. The Court has supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367 because those claims arise from a common nucleus of operative fact as Plaintiff's ADEA, Title VII, and Section 1981 claims.

16. Venue is proper in this Southern District of New York pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because unlawful practices complained of herein occurred within the Southern District of New York.

17. Pursuant to Section 8-502(c) of the NYCHRL, Plaintiff has caused a copy of the Complaint to be served on the Corporation Counsel of the City of New York and the New York City Commission on Human Rights.

## FACTUAL ALLEGATIONS

### Coleman's Background and Record of Success

18. Coleman, a Registered Nurse, started working for People Care in or about 1997, when People Care hired her as a Registered Nurse/Home Health Aide Instructor.

19. In this role, Coleman was responsible for preparing training programs and teaching prospective Home Health Aides on various medical tasks and other duties related to serving as a Home Health Aide.

20. Given Coleman's strong performance record, People Care over time tasked Coleman with additional duties, including, among other things, performing medical clearances, investigating incident reports, and developing new trainings for Home Health Aides.

21. As reflected by her decades-long tenure at People Care, Coleman excelled in her duties.

22. Coleman consistently received strong performance reviews, including those immediately prior to her firing. Indeed, on every annual performance review Coleman received

4

from 2015 until her firing, Coleman received an "excellent" rating, the highest possible mark, for every category that was evaluated.

### Preoccupation with and Biased Comments about Coleman's Age

23. Throughout her tenure at People Care, Coleman was one of the company's oldest employees and among the oldest members of the teaching staff.

24. At the time of her unlawful firing, Coleman was 86 and was People Care's oldest instructor and one of the company's oldest employees.

25. Although Coleman excelled in her duties, Coleman's supervisors and other People Care employees were preoccupied with and repeatedly made biased comments concerning Coleman's age.

26. For instance, Brett, who was among those who participated in the decision to discharge Coleman, repeatedly commented about Coleman's appearance and energy, which Brett said were surprising for someone of Coleman's age.

27. Brett, for example, commented in or about 2014 that she did not know how Coleman could be working the hours Coleman did at her age. Brett also regularly told Coleman, including in or about 2019, that Coleman's energy was surprising for someone of her age and that Coleman looked good for someone her age.

28. Likewise, Trocchia, who on information and belief also participated in the decision to fire Coleman, told Coleman in or about 2019 that she was surprised Coleman was still working at her age.

29. In addition, in or around 2018, one Coleman's former supervisor, Altomonte, suggested that Coleman retire and told Coleman, among other things, that Coleman should go home, put her feet up, and relax.

5

30. Given the atmosphere fostered by the biased comments of People Care supervisors, it was not surprising that other employees felt permitted also to make biased comments about Coleman's age.

31. For instance, in or about 2019, a supervisory nurse told Coleman, in sum and substance, that she could not understand how Coleman could still be working at her age.

32. Likewise, an employee in People Care's finance department, regularly asked Coleman, including in 2019, when Coleman would retire and questioned why Coleman was still working.

### Racially Biased Conduct at People Care and Coleman's Complaints

33. People Care's discriminatory conduct extended beyond age-biased acts. Indeed, Coleman encountered multiple racially biased incidents while on the job.

34. Trocchia, in particular, engaged in repeated racially biased acts.

35. For example, in or about 2018, a Black woman from a local administrative agency came to People Care to review People Care's compliance with handwashing guidelines and similar hygiene and safety protocols. When Trocchia learned that the administrative official had requested (reasonably) certain compliance information, Trocchia dismissively said, "That Black woman doesn't know anything." In Coleman's observations, and on information and belief, Trocchia did not make similar dismissive remarks when non-Black officials and other third parties made comparable requests.

36. Trocchia, likewise, enforced a policy of not hiring potential home health aides of a certain weight, a policy having a disproportionate impact on qualified Black applicants. Trocchia told Coleman that Brett had requested Trocchia maintain this practice.

37. Coleman raised concerns to Trocchia about this practice disproportionally impacting Black applicants, but Trocchia brushed off Coleman's concerns and continued to enforce the policy unduly excluding qualified Black potential hires.

38. Similarly, in and around 2017, People Care discharged several qualified Black nursing employees. On information and belief, the discharged Black employees were not performing poorly or less well than similar non-Black peers that People Care retained.

39. Coleman complained about these firings to Klebanova, who forwarded Coleman's complaints to Altomonte. Altomonte discussed the issue with Coleman, but People Care did not correct the decision. On the contrary, People Care hired a number of non-Black employees to replace the discharged Black employees.

40. The indifference to Coleman's concerns about biased conduct on the job unfortunately was not surprising. Indeed, in or about May 2019, Coleman had an incident with Home Health Aide trainee during which Coleman was called a racially charged term. Coleman raised concerns about the incident to Brett and others. Although People Care removed the trainee from the program, no one in leadership, including Brett, addressed the situation with Coleman or imposed suitable corrective measures to ensure that similar incidents would not happen moving forward.

41. Rather, Coleman was branded dramatic. During an annual meeting, shortly after Coleman complained about the incident with the Home Health Aide trainee who called Coleman a racially charged term, Trocchia, while introducing a new non-Black employee, said in sum and substance, while staring at Coleman, "I'm glad you're not one of those drama queens." In Coleman's observations, and on information and belief, Trocchia did not use similar language when referring to others.

Other Differential Treatment

42. Coleman also was treated differently from her peers in other ways.

43. For instance, Trocchia regularly excluded Coleman from meetings, including those during which information important to Coleman's job was discussed. Trocchia, however, included younger and non-African American employees in meetings under similar circumstances.

44. In or about 2019, Coleman complained to Klebanova about her exclusion from meetings. Coleman's complaint was directed to Brett, who met with Coleman to discuss to the issue. Although Brett told Coleman that she would address the issue with Trocchia, Trocchia continued to exclude Coleman from meetings.

45. In addition to excluding Coleman from meetings unfairly, Trocchia also ostracized Coleman and undermined Coleman's standing with others by, among other things, telling personnel not to come to Coleman for advice about nursing or other decisions. In Coleman's observations and, on information and belief, Trocchia did not similarly instruct others not to go to Coleman's younger, non-Black, and less experienced peers with similar inquiries.

Coleman's Unlawful Firing

46. Given People Care's repeated biased acts, it unfortunately was not surprising that the company used the Covid-19 pandemic as subterfuge for terminating Coleman and others.

47. In the early days of the pandemic, in or about March 2020, during one of Coleman's shifts, Coleman encountered Brett in a hallway at People Care's offices. Brett asked Coleman strangely, "What are you doing here?" Coleman told Brett she was here for her shift and that she had noticed that others were being trained for remote work in light of the pandemic. Coleman had not been told she would be receiving training for remote work and asked Brett

8

whether she would be trained. The day before, Coleman also had asked Trocchia whether she would be trained for remote work, and Trocchia responded that she did not know what was happening.

48. After Coleman asked whether she would receive remote work training as others had been receiving, Brett and Coleman went to Brett's office and Brett called Klebanova. Brett told Klebanova that Coleman should be added to the training list.

49. Although Brett said Coleman should be added to the training list, Klebanova did not reach out to Coleman to convey information concerning training. Rather, when Coleman arrived for her shift the following day and saw Klebanova, Klebanova told Coleman to go to a remote training meeting that was already in progress. Coleman had not been invited to this training meeting earlier. Trocchia was among those heading the meeting, which was in its closing stages when Coleman arrived. After the meeting, Coleman approach one of the instructors to ask about information she had missed. The instructor told Coleman that although he did not have time to instruct Coleman now, he would arrange a time for training by phone later.

50. After failing to be invited to training, Coleman called Brett to let Brett know that although she did not have certain equipment necessary for remote work, she was in the process of obtaining equipment. In response, Brett tellingly told Coleman brusquely, in some and substance, that People Care had enough nurses and that they would figure out what to do with Coleman.

51. On or about March 27, 2020, Coleman had a call with Brett. Brett told Coleman that People Care intended to cut Coleman's hours but said that the company could be "flexible" with Coleman. Brett said that she would speak to Coleman more the following Monday.

52. The following Monday, on or about March 30, 2020, Coleman and Brett had another call. Shortly before this call, Coleman received a called from Trocchia, who curiously

asked Coleman what Coleman's "plans were." Coleman asked Brett whether she could have more hours than what had been proposed by Brett when they spoke a few days earlier, Brett, however, told Coleman that People Care decided to discharge Coleman.

53. Consistent with her prior biased remarks, Brett suggested that Coleman's age motivated the decision, telling Coleman, in sum and substance, that she did not want someone "like [Coleman]" on the subway, particularly at late hours. Given that Coleman had worked late hours and had been coming to the office despite the rising pandemic, this explanation was unconvincing. In addition, as employees were being trained for remote work, Brett's purported concerns about travel were illogical. During this conversation, Brett did not offer any other explanation or justifications for Coleman's firing after more than 20 years of exemplary service.

54. Despite firing one of its top performing instructors, People Care retained younger and non-Black instructors, including those who, on information and belief, were poorer performers than Coleman, assumed Coleman's duties, and continued to teach courses like those Coleman had taught.

55. Indeed, Coleman was only one of three instructors who were discharged around this time; the other two instructors who were fired were, like Coleman, Black. As stated above, People Care retained non-Black instructors who assumed these discharged instructors' duties.

56. Coleman was older than all the instructors whom People Care retained, several of whom, on information and belief, were poorer performers than Coleman.

57. In or about mid-April 2020, Coleman received a termination letter from People Care. The letter offered no additional explanation for Coleman's unlawful firing.

58. In addition, sometime after Coleman's firing, People Care, on information and belief, began hiring new instructors and hired several younger and non-Black instructors who began teaching courses like those Coleman had taught.

## FIRST CAUSE OF ACTION
(Discrimination Based on Age under the ADEA)

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 of this Complaint as if set forth herein.

60. By the acts and practices described above, Defendant discriminated against Plaintiff by treating her differently in the terms and conditions of her employment based on her age in violation of the ADEA.

61. Defendant's conduct showed reckless disregard for Plaintiff's statutorily protected rights.

62. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable injury and other compensable damage unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
(Discrimination Based on Age under the NYSHRL)

63. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 62 of this Complaint as if set forth herein.

64. By the acts and practices described above, Defendant discriminated against Plaintiff by treating her differently in the terms and conditions of her employment based on her age and subjecting her to a hostile work environment based on her age in violation of the NYSHRL.

65. Defendant's conduct showed reckless disregard for Plaintiff's statutorily protected rights.

66. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable injury and other compensable damage unless and until this Court grants relief.

### THIRD CAUSE OF ACTION
(Discrimination Based on Age under the NYCHRL)

67. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 66 of this Complaint as if set forth herein.

68. By the acts and practices described above, Defendant discriminated against Plaintiff by treating her differently in the terms and conditions of her employment based on her age and subjecting her to a hostile work environment based on her age in violation of the NYCHRL.

69. Defendant's conduct showed willful and/or wanton negligence, recklessness, and conscious disregard for Plaintiff's statutorily protected rights. Defendant's conduct was reckless to the degree it demonstrated conscious disregard for Plaintiff's statutorily protected rights.

70. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable injury and other compensable damage unless and until this Court grants relief.

### FOURTH CAUSE OF ACTION
(Discrimination Based on Race under Title VII)

71. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 70 of this Complaint as if set forth herein.

72. By the acts and practices described above, Defendant discriminated against Plaintiff by treating her differently in the terms and conditions of her employment based on her race in violation of Title VII.

73. Defendant's conduct showed reckless disregard for Plaintiff's statutorily protected rights.

74. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable injury and other compensable damage unless and until this Court grants relief.

FIFTH CAUSE OF ACTION
(Discrimination Based on Race under Section 1981)

75. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint as if set forth herein.

76. By the acts and practices described above, Defendant discriminated against Plaintiff by treating her differently in the terms and conditions of her employment based on her race in violation of Section 1981.

77. Defendant's conduct showed reckless disregard for Plaintiff's statutorily protected rights.

78. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable injury and other compensable damage unless and until this Court grants relief.

SIXTH CAUSE OF ACTION
(Discrimination Based on Race under the NYSHRL)

79. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 78 of this Complaint as if set forth herein.

80. By the acts and practices described above, Defendant discriminated against Plaintiff by treating her differently in the terms and conditions of her employment based on her race and subjecting her to a hostile work environment based on her race in violation of the NYSHRL.

81. Defendant's conduct showed reckless disregard for Plaintiff's statutorily protected rights.

82. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable injury and other compensable damage unless and until this Court grants relief.

## SEVENTH CAUSE OF ACTION
(Discrimination Based on Race under the NYCHRL)

83. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 82 of this Complaint as if set forth herein.

84. By the acts and practices described above, Defendant discriminated against Plaintiff by treating her differently in the terms and conditions of her employment based on her race and subjecting her to a hostile work environment based on her race in violation of the NYCHRL.

85. Defendant's conduct showed willful and/or wanton negligence, recklessness, and conscious disregard for Plaintiff's statutorily protected rights. Defendant's conduct was reckless to the degree it demonstrated conscious disregard for Plaintiff's statutorily protected rights.

86. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable injury and other compensable damage unless and until this Court grants relief.

## EIGHTH CAUSE OF ACTION
(Retaliation under Title VII)

87. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 86 of this Complaint as if set forth herein.

88. By the acts and practices described above, Defendant retaliated against Plaintiff for engaging in protected activity under Title VII.

89. Defendant's conduct showed reckless disregard for Plaintiff's statutorily protected rights.

90. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable injury and other compensable damage unless and until this Court grants relief.

NINTH CAUSE OF ACTION
(Retaliation under Section 1981)

91. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 90 of this Complaint as if set forth herein.

92. By the acts and practices described above, Defendant retaliated against Plaintiff for engaging in protected activity under Section 1981.

93. Defendant's conduct showed reckless disregard for Plaintiff's statutorily protected rights.

94. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable injury and other compensable damage unless and until this Court grants relief.

TENTH CAUSE OF ACTION
(Retaliation under the NYSHRL)

95. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 94 of this Complaint as if set forth herein.

96. By the acts and practices described above, Defendant retaliated against Plaintiff for engaging in protected activity under the NYSHRL.

97. Defendant's conduct showed reckless disregard for Plaintiff's statutorily protected rights.

98. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable injury and other compensable damage unless and until this Court grants relief.

ELEVENTH CAUSE OF ACTION
(Retaliation under the NYCHRL)

99. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 98 of this Complaint as if set forth herein.

100. By the acts and practices described above, Defendant retaliated against Plaintiff for engaging in protected activity under the NYCHRL.

101. Defendant's conduct showed willful and/or wanton negligence, recklessness, and conscious disregard for Plaintiff's statutorily protected rights. Defendant's conduct was reckless to the degree it demonstrated conscious disregard for Plaintiff's statutorily protected rights.

102. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable injury and other compensable damage unless and until this Court grants relief.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

(a) declaring the acts and practices complained of herein to be violations of the ADEA, Title VII, Section 1981, the NYSHRL, and the NYCHRL.

(b) enjoining and permanently restraining these violations of the ADEA, Title VII, Section 1981, the NYSHRL, and the NYCHRL.

(c) directing Defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

(d) directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's treatment of her, and making her whole for all earnings and other benefits she would have received but for Defendant's treatment, including but not limited to wages, including back pay and front pay, bonuses, and other lost benefits;

(e) directing Defendant to pay Plaintiff liquidated damages for its violation of the ADEA;

   (f)  directing Defendant to pay Plaintiff compensatory damages, including damages for emotional distress, humiliation, pain and suffering, and injury to professional standing and reputation;

   (g)  directing Defendant to pay Plaintiff additional amounts as punitive damages;

   (h)  awarding Plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award;

   (i)  awarding Plaintiff the costs of this action, together with reasonable attorneys' fees; and

   (j)  awarding such other and further relief as this Court deems necessary and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Federal Rule of Civil Procedure Rule 38(b), Plaintiff demands a trial by jury in this action.

Dated: New York, New York
    January 31, 2023

          VLADECK, RASKIN & CLARK, P.C.

          By:  */s/ Yannick A. Grant*
            Yannick A. Grant
            Vladeck, Raskin & Clark P.C.
            Attorneys for Plaintiff
            565 Fifth Avenue, 9th Floor
            New York, New York  10017
            (212) 403-7300